UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEPHANIE BRYANT-LIPP, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-CV-969 RLM-MJD |
| | ) | |
| SENIOR LIVING WINDERMERE, LLC, | ) | |
| and CINTAS CORPORATION NO. 2, | ) | |
| | ) | |
| *Defendants* | ) | |

## ORDER

Stephanie Bryant-Lipp slipped and fell while visiting a senior living facility for work. She sued Senior Living Windermere, LLC, and Cintas Corporation No. 2 for negligence. Each defendant moved for summary judgment. For reasons explained in this opinion, the court DENIES Senior Living Windermere's motion for summary judgment, [Doc. 73], and GRANTS Cintas Corporation No. 2's motion for summary judgment. [Doc. 76].

### BACKGROUND

Stephanie Bryant-Lipp is a nurse practitioner, practicing geriatric home health care. Ms. Bryant-Lipp regularly visited Independence Village of South Fishers to provide care for Independence Village's residents. Ms. Bryant-Lipp paid a visit to see two patients on October 22, 2020. Entering the main vestibule, she took one step on a rug and the rug began to slip. As she took a second and

third step, the rug kept slipping, and on her fourth or fifth step, she was propelled forward. She fell into a door and then onto the ground, injuring her arm and head. Ms. Bryant-Lipp went to the hospital for her injuries. She sued Senior Living Windermere, LLC, which owns Independence Village, and Cintas Corporation No. 2, which provides and services the rugs at Independence Village.

Windermere moves for summary judgment, arguing that there's no genuine issue as to the cause of Ms. Bryant-Lipp's fall and no genuine issue as to whether Windermere had actual or constructive knowledge of any danger. Cintas moves for summary judgment, arguing that it owed no duty of care to Ms. Bryant-Lipp, and that any other theory of liability fails as a matter of law.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A court accepts the non-movant's evidence as true and draw all inferences in his favor. Id. at 255. Nevertheless, the nonmoving party is not entitled to "[i]nferences that are supported by only speculation or conjecture." Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v.

<u>Home Depot U.S.A., Inc.</u>, 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." <u>Hemsworth v. Quotesmith.com, Inc.</u>, 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

DISCUSSION

*Windermere's Motion for Summary Judgment*

Windermere moves for summary judgment, arguing that there's no genuine issue as to causation and no genuine issue as to actual or constructive knowledge of a danger.

To prove negligence, a plaintiff must show that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury. <u>Kincade v. MAC Corp.</u>, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002). A landowner owes a duty of reasonable care to invitees, <u>Burrell v. Meads</u>, 569 N.E.2d 637, 642 (Ind. 1991), and the parties agree that Ms. Bryant-Lipp was Windermere's invitee. Indiana defines the landowner-invitee duty according to § 343 of the Restatement (Second) of Torts. <u>Rogers v. Martin</u>, 63 N.E.3d 316, 322 (Ind. 2016). A landowner is liable to an invitee for physical harm caused by a condition of the land if he:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

3

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (Am. Law Inst. 1965).

Windermere argues that Ms. Bryant-Lipp's only evidence of what caused the fall is speculative, so there's no genuine issue as to causation between a breach of duty and injury. A plaintiff can't rely on an accident alone to infer negligence but must provide evidence beyond speculation of what caused an injury. Scott Cnty. Fam. YMCA, Inc. v. Hobbs, 817 N.E.2d 603, 604–605 (Ind. Ct. App. 2004). Ms. Bryant-Lipp is the only witness of her fall and doesn't remember the weather before her fall (i.e., whether it was rainy) nor noticed anything wet or slippery on the floor before her fall. According to Windermere, other employees observed moisture under or near the rug after the fall, but they didn't see any moisture until at least 30 minutes after the fall when Mr. Booth, director of maintenance, lifted the rug. Windermere argues this is insufficient to show causation because it's evidence of the state of the floor *after* Ms. Bryant-Lip's fall and she needs evidence of some dangerous condition *before* her fall to prove causation. None of those witnesses can explain where the moisture could have come from.

Windermere's second argument for summary judgment goes to actual or constructive knowledge. Windermere argues there's no evidence that Windermere knew or by the reasonable exercise of care would have discovered the wet or slippery rug. Though some employees observed moisture under the rug 30 minutes or later after the fall, they didn't observe any moisture before the fall. Windermere's witnesses testified that they never received reports or

complaints about wet or otherwise dangerous conditions in the vestibule before the fall. By Windermere's estimation, this evidence shows there's no genuine issue of actual knowledge.

Likewise, Windermere contends there's no genuine issue of constructive knowledge. A plaintiff must show that a condition existed "for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." Schulz v. Kroger Co., 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012) (quoting Wal-Mart Stores, Inc. v. Blaylock, 591 N.E.2d 624, 628 (Ind. Ct. App. 1992)). Windermere explains that Ms. Bryant-Lipp has no evidence of a rug defect or of a slippery floor, nor evidence of how long the floor was allegedly wet. Without evidence of that risk or evidence of the duration and circumstances of the risk, there's could be no genuine issue as to constructive knowledge.

Ms. Bryant-Lipp responds to both arguments with an affidavit from Deborah Gunn that contradicts Windermere's version of events, particularly as to Mr. Booth's words and actions. Ms. Gunn worked as a housekeeper at Independence Village when Ms. Bryant-Lipp fell. Ms. Gunn attests in an affidavit that when she arrived at work the day after the fall, Mr. Booth told her that Ms. Bryant-Lipp had fallen the day before. Mr. Booth said that Ms. Bryant-Lipp fell because the rug slipped from under her, and that the rug slipped from under her "because there was water on the floor underneath that mat." [Doc. 87-2 at 2]. Mr. Booth went on to say that there'd been a "hard rainfall event that morning and rainwater had come in from underneath the exterior door and onto the tile

5

floor in the vestibule." Id. Mr. Booth further relayed to Ms. Gunn that he'd had someone mop the tile floor to dry up the rainwater, but that person didn't pick up the rug to wipe up or dry beneath the rug. Then Mr. Booth cast blame on Ms. Gunn: "Jerry Booth also blamed me, claiming that he had previously told me about the problem with rainwater coming in underneath the door and had told me to clean it up." Id.

Ms. Gunn's affidavit would require denying Windermere's motion for summary judgment. Mr. Booth's admission that there was water under the rug before and after the fall creates a genuine issue as to causation. Mr. Booth's statement that he'd ordered Ms. Gunn to clean up troublesome rainwater before creates a genuine issue as to actual or constructive knowledge of the danger.

Windermere gives several reasons why the court mustn't consider Ms. Gunn's affidavit. First, the affidavit wasn't properly disclosed in discovery, so it is procedurally excluded. Second, the affidavit is inadmissible hearsay. Third, the affidavit is too vague and general. Fourth, the affidavit doesn't establish Mr. Booth's personal knowledge of the facts asserted.

The first argument arises from litigants' obligations in discovery. A party who doesn't disclose a witness or evidence in initial or supplemental disclosures is prohibited from using that witness or evidence on a motion, unless the nondisclosure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The parties had until April 15, 2022, to complete liability discovery, with a limited extension until May 11, 2022, to complete depositions. Windermere filed its motion for summary judgment on May 13, 2022, the deadline for dispositive

motions. Ms. Bryant-Lipp didn't disclose Ms. Gunn and her affidavit until she filed her response in opposition. Windermere urges that this requires automatic exclusion of the affidavit.

Whether nondisclosure was substantially justified or harmless depends on four factors: (1) prejudice or surprise to the opposing party; (2) the ability of the party to cure the prejudice; (3) the likelihood of disrupting trial; and (4) the disclosing party's bad faith or willfulness. Banister v. Burton, 636 F.3d 828, 833 (7th Cir. 2011). Windemere argues the affidavit's belated disclosure deprived Windermere the chance to impeach the affidavit, prejudicing Windermere. It suggests Ms. Bryant-Lipp set her own trap by pursuing discovery with little diligence; Ms. Bryant-Lipp only learned of Ms. Gunn while deposing Mr. Booth, but she waited until the very end of discovery to depose Mr. Booth. Windermere disclosed Mr. Booth months earlier. Windermere stops short of accusing Ms. Bryant-Lipp of bad faith or willfulness but suggests she could've avoided this delay by conducting discovery more diligently.

According to Ms. Bryant-Lipp, her late disclosure is substantially justified or harmless. She disputes Windermere's claims of prejudice and surprise – Windermere employed Ms. Gunn so knew or should've known that she might be a witness and had or should have had her contact information. What's more, she says Windermere violated its own disclosure obligations by not disclosing Ms. Gunn as a witness; Ms. Bryant-Lipp asked in an interrogatory who was responsible for maintaining the vestibule and Windermere responded that the entire staff was responsible, and that Mr. Booth was director of maintenance.

7

Ms. Gunn was never specifically disclosed and Ms. Bryant-Lipp only found out that housekeeping and Ms. Gunn were responsible for cleaning the vestibule and maintaining the rug after pressing the issue at Mr. Booth's deposition. Once she learned of Ms. Gunn, Ms. Bryant-Lipp claims to have disclosed her reasonably promptly; Ms. Bryant-Lipp got hold of Ms. Gunn on June 2 and disclosed her as a witness eight days later when she served her response in opposition to summary judgment. She adds that Windermere's representatives were at Mr. Booth's deposition, so they knew of Ms. Gunn then, if not sooner, and Ms. Bryant-Lipp served an expert report referencing Ms. Gunn's affidavit on June 3.

Ms. Bryant-Lipp's late disclosure of Ms. Gunn as a witness is substantially justified or harmless so won't be excluded under Rule 37. Windermere's claim of surprise doesn't cleanly square with its own employment relationship with Ms. Gunn and its interrogatory response in discovery. Windermere doesn't contest that Ms. Gunn was part of the housekeeping staff at the time of Ms. Bryant-Lipp's fall but then doesn't explain why she wasn't included in any answers to Ms. Bryant-Lipp's interrogatories. As for Windermere's claim that Ms. Bryant-Lipp could've learned of Ms. Gunn sooner had she deposed Mr. Booth sooner, the same is true had Windermere disclosed Ms. Gunn sooner. At any rate, Windermere doesn't show or explain how late disclosure amounts to willfulness or bad faith rather than carelessness, and lack of diligence alone doesn't cut against Ms. Bryant-Lipp. Finally, prejudice and likelihood of disrupting trial aren't great. Ms. Bryant-Lipp disclosed Ms. Gunn belatedly, but not on the eve of trial. The affidavit's belated disclosure may have caught Windermere off guard

for summary judgment, but Windermere's only claim of prejudice is missing the chance to impeach the affidavit. Windermere doesn't explain how that amounts to prejudice when a court can't weigh credibility at summary judgment. The late disclosure of Ms. Gunn's affidavit was harmless or substantially justified, so the court declines to exclude the affidavit under Rule 37(c).

Windermere argues that various evidentiary rules require exclusion if belated disclosure doesn't require excluding Ms. Gunn's affidavit: the affidavit is inadmissible hearsay; it is too general and vague; and it otherwise lacks foundation or evidence of personal knowledge.

Ms. Bryant-Lipp proposes that Ms. Gunn's affidavit, which describes Mr. Booth's statements, qualifies as a party opponent's statement, so isn't hearsay. Fed. R. Evid. 801(d)(2)(D). Windermere argues the affidavit is inadmissible hearsay, specifically focusing on paragraphs six through ten. Those paragraphs say that Mr. Booth, in his role as head of maintenance, told Ms. Gunn how Ms. Bryant-Lipp had slipped the day before, how rainwater had come into the vestibule, that he had someone mop the vestibule but not under the rug, and that Mr. Booth blamed Ms. Gunn because she hadn't cleaned up rainwater several times in the past. Windermere acknowledges that the affidavit at first blush seems to be an opposing party's statement, so not hearsay. *See* Fed. R. Evid. 801(d)(2)(D). A statement isn't hearsay if it's offered against an opposing party and is made by the person's party or agent on a matter within the scope of that relationship. Id. Windermere specifically argues that paragraphs six through ten don't meet the definition because no facts establish that Mr. Booth

made the statements within the scope of his employment. Those paragraphs refer to Mr. Booth's title as "head of maintenance" and says he acted in that role, but Windermere contends that those statements are too cursory to establish paragraphs six through ten as an opposing party's statements.

Windermere's reading of Rule 801 would demand too much of the affidavit. There's no dispute that Mr. Booth was head of maintenance; Windermere described Mr. Booth as "director of maintenance" in response to an interrogatory requesting the identity and job title of anyone responsible for maintaining the area where the incident occurred. [Doc. 91-3 at 4]. The affidavit describes Mr. Booth's employment relationship in a cursory manner, but an opposing party's statement may be considered with other evidence, Fed. R. Evid. 801(d). The affidavit and Windermere's interrogatory response are enough to establish Mr. Booth's employment as head of maintenance.

As for the scope of employment, Windermere takes too narrow a view. An admission can be made concerning any matter in the scope of employment, and "the only requirement is that the subject matter of the admission match the subject matter of the employee's job description." Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 762 (7th Cir. 2003). "Director of maintenance" or "head of maintenance" colloquially suggests that Mr. Booth's statements about water in the vestibule, his command to someone else to clean the vestibule, and his blaming Ms. Gunn for the slippery vestibule are all in the scope of his employment. The interrogatory only confirms that; Windermere responded that maintenance of the area of the accident was the responsibility of Windermere

and its employees, and that Mr. Booth was director of maintenance. Each of the statements involve maintenance of the vestibule area, so they fall within the scope of Mr. Booth's employment. The affidavit satisfies Rule 801(d)(2)(D) and isn't to be excluded as inadmissible hearsay.

Windermere next argues that Ms. Gunn's affidavit is too general and vague. Rule 56 requires "something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of truth of the matters asserted." Lucas v. Chi. Transit Auth., 367 F.3d 714, 726 (7th Cir. 2004). Windermere attacks paragraphs six through ten as being conclusory because the affidavit doesn't explain how, when, why, or if Mr. Booth determined that Ms. Bryant-Lipp had fallen, that there'd been rain, that he had someone else mop up rainwater, or that he blamed Ms. Gunn. Windermere also objects to the assertion that Mr. Booth said he had someone else mop up the floor because the affidavit doesn't say who that other person was. Finally, Windermere objects to the assertions about casting blame and past incidents. Mr. Booth purportedly blamed Ms. Gunn for not cleaning up rainwater before and explained it had been an issue in the past, but Windermere says that Mr. Booth blamed Ms. Gunn is speculation to his mental state and that his statement about past incidents isn't detailed enough because he makes no indication of when those past incidents were.

These objections don't require excluding the affidavit. The assertion that Mr. Booth said he had someone mop the floor is specific enough to show that he reacted to a wet floor even if he didn't say who did the mopping. The assertion

that Mr. Booth blamed Ms. Gunn seems to convey that Mr. Booth told Ms. Gunn she was at fault, even if that assertion doesn't include a verbatim quote from Mr. Booth. The statement that Mr. Booth told Ms. Gunn he'd told her to clean up rainwater before is also specific enough to support a finding that Mr. Booth knew about the issue; that Mr. Booth said it rainwater had been an issue before is probative of his knowledge of any danger even if he didn't say or know exactly when those past incidents were.

Next, Windermere argues that the affidavit doesn't include facts that establish any foundation, i.e., how Mr. Booth is competent to make the statements or has personal knowledge of the facts asserted. The affidavit says Mr. Booth told Ms. Gunn that "I was informed of the fall that had occurred" and says that Ms. Bryant-Lipp had fallen because it had rained and that rainwater got underneath the mat. [Doc. 87-2]. Windermere contends that these statements don't convey whether Mr. Booth observed the fall, the rain, or the wet floor, so there's inadequate foundation.

Windermere rests this argument on <u>Thomas v. Stone Container Corp.</u>, 922 F. Supp. 950 (S.D.N.Y 1996), in which a statement was excluded as irrelevant because it went to someone's state of mind rather than a fact of consequence. <u>Id.</u> at 957. The court explained that even if the statement were relevant, it would be excluded as hearsay because the declarant was unidentified, so there was no way of knowing if the statement met the requirements of Fed. R. Evid. 801(d)(2)(B) or (C). <u>Id.</u> The court elaborated even further that if the hearsay objection were overcome, the speaker was unidentified, so there was no evidence

12

to support that the declarant had personal knowledge of the statement. <u>Id.</u> The court summarized this by explaining that "the proponent of a party admission must establish the declarant's competence; office or plant gossip does not become admissible simply because it is put into the mouth of someone whose statements are not subject to hearsay objection." <u>Id.</u> The same applies here, according to Windermere, because statements that are nonhearsay are still subject to other evidentiary rules. *See* <u>Aliotta v. Nat'l R.R. Passenger Corp.</u>, 315 F.3d 756, 762–763 (7th Cir. 2003) (subjecting Rule 801(d)(2) statements to scrutiny under Rules 701(c) and 702).

Ms. Bryant-Lipp argues there's no personal knowledge requirements for Rule 801(d)(2) nonhearsay statements. Indeed, Ms. Bryant-Lipp has the better authority that personal knowledge is generally not required for nonhearsay statements under Rule 801(d)(2) – our court of appeals has suggested that Rule 801 doesn't require personal knowledge, as under Rule 602, even if nonhearsay statements under Rule 801(d)(2) are still subject to other rules, like Rule 403's balancing of prejudice against probative value. <u>Mister v. Ne. Ill. Commuter R.R. Corp.</u>, 571 F.3d 696, 698–699 (7th Cir. 2009). Other courts agree. *E.g.* <u>Brookover v. Mary Hitchcock Mem'l Hosp.</u>, 893 F.2d 411, 415–418 (1st Cir. 1990); <u>Mahlandt v. Wild Canid Survival & Rsch. Ctr., Inc.</u>, 588 F.2d 626, 630–631 (8th Cir. 1978); <u>Weinstein v. Siemens</u>, 756 F. Supp. 2d 839, 853–854 (E.D. Mich. 2010); *see also* 4 Christopher B. Mueller & Laird C. Kirkpatrick, <u>Federal Evidence</u> § 8:55 (4th ed.) ("The bulk of modern authority holds that personal knowledge is not required

13

for agent's admissions, although some cases treat the question as remaining open.").

Even if certain affidavit statements were excluded for lack of personal knowledge and foundation, other statements would remain, and those others would preclude summary judgment. Mr. Booth purportedly said he told someone to mop the rainwater in the vestibule and purportedly said rainwater had been an issue before. Neither statement requires more facts to establish personal knowledge because Mr. Booth is recounting his own statements and actions. Those two facts wouldn't be excluded for lack of personal knowledge and they create genuine issues as to the cause of the fall and actual or constructive knowledge. Even if the court scrutinized the affidavit for a personal knowledge requirement, enough of the affidavit would survive to preclude summary judgment.

Finally, Windermere argues that Mr. Booth's deposition testimony either disproves the affidavit or shows Mr. Booth lacked personal knowledge. To the extent Windermere is correct, those conflicts only show that there's a factual dispute, not that that Ms. Gunn's affidavit is to be discarded or disbelieved.

Windermere's summary judgment motion depended on a lack of evidence for causation and actual or constructive knowledge. Ms. Bryant-Lipp created a genuine issue of material fact with Ms. Gunn's affidavit, albeit after Windermere moved for summary judgment. None of Windermere's arguments under the Federal Rules of Civil Procedure of the Federal Rules of Evidence require exclusion of the affidavit at summary judgment. The affidavit creates a genuine

issue as to proximate cause and actual or constructive knowledge, so the court denies Windermere's motion for summary judgment.

### *Cintas Corporation No. 2's Motion for Summary Judgment*

Cintas Corporation No. 2 argues it's entitled to summary judgment because it owed no duty of care to Ms. Bryant-Lipp and because any other theory of liability would be futile, for one reason or another. Ms. Bryant-Lipp sued Cintas for negligence, so she can only prevail if Cintas owed her a duty of care. *See* Williams v. Cingular Wireless, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004). Whether one party owes a duty of care to another is a question of law for a court to resolve. Id. If a duty isn't previously established under Indiana law, a court decides whether to impose a common-law duty by considering (1) the relationship between the parties, (2) the reasonable foreseeability of harm, and (3) public policy concerns. Id.

According to Cintas, Ms. Bryant-Lipp hasn't shown any preexisting duty between Cintas and herself, and no duty should be imposed. Cintas says each of the three factors cuts against imposing a duty. First, the parties aren't in any sort of contractual relationship and the slip and fall didn't involve any of Cintas's land or employees. Second, any number of variables might cause a slip and fall, including many beyond Cintas's control, like how its clients choose to place and maintain their rugs. Third, public policy weighs against imposing a duty because Cintas can't control what others do with their rugs and imposing a duty would open the door to endless liability. Cintas argues that it is like the cell phone

15

provider in <u>Williams v. Cingular Wireless</u>, 809 N.E.2d 473 (Ind. Ct. App. 2004), who was held to owe no duty of care to a plaintiff who got in an automobile accident with the cell phone provider's customer.

Ms. Bryant-Lipp doesn't address any of Cintas's legal arguments and instead explains that Windermere failed to preserve the two rugs in rotation at the time of Ms. Bryant-Lipp's fall. She never had the chance to inspect the rugs for any defects that might be relevant for her negligence claim. Ms. Bryant-Lipp asserts that Windermere's "willful, negligence, or otherwise spoliation of evidence of these two rugs warrants a judicial determination that neither Plaintiff, nor Defendant Senior Living Windermere, LLC . . .  are able to establish any evidence of a defect with the rugs." [Doc. 87 at 14–15].

Ms. Bryant-Lipp waived her claims by not responding to Cintas's legal arguments. <u>Citizens for Appropriate Rural Rds. v. Foxx</u>, 815 F.3d 1068, 1078 (7th Cir. 2016). Even without Ms. Bryant-Lipp's waiver, Cintas has shown that it owed no duty of care to Ms. Bryant-Lipp and is entitled to summary judgment.


Conclusion

For the foregoing reasons, the court:

(1) DENIES Senior Living Windermere's motion for summary judgment [Doc. 73]; and

(2) GRANTS Cintas Corporation No. 2's motion for summary judgment [Doc. 76].

SO ORDERED.

ENTERED: __November 22, 2022__

_____/s/ Robert L. Miller, Jr._
Judge, United States District Court

Distribution to all counsel of record via CM/ECF.